LEYSER ET, PLAINTIFFS-APPELLANTS, *v.* ZELL ET, DEFENDANTS-APPELLEES.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26540. Decided January 23, 1964.

382

*Messrs. Stapleton & Smith,* for plaintiffs-appellants.
*Mr. George Braun,* for defendants-appellees.

WASSERMAN, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas entered upon a verdict in favor of plaintiffs-appellants, hereinafter referred to as plaintiffs, in the sum of "none Dollars" against the defendants-appellees, hereinafter referred to as defendants.

Plaintiffs purchased property from defendants through the efforts of a realtor engaged by the defendants under a contract providing, among other things, that "the seller shall furnish the buyer a list of tenants and rentals charged for each suite," and that "the entire risk of the loss by fire, vandalism, or other hazards shall be borne by the seller until the time of the transfer."

The title to the property passed from the defendants to the plaintiffs on July 22, 1959. A defect in a hot water tank was discovered on July 14, 1959, by the insurance inspector in the form of an emergency plug not readily apparent to the average individual. On April 16, 1960, the building was found to be infested with termites in a swarming state. It appears from the evidence that sometime in 1959 Mrs. Zell, one of the defendants herein, had instructed one of the tenants, Mrs. Crowe, not to mention the existence of the termites in the building when it was up for sale just prior to the purchase by the plaintiffs.

The escrow instructions were filed June 25, 1959. The plaintiffs placed their funds in escrow on July 1, 1959; defendants placed a deed in escrow on July 17, 1959. The plaintiffs did not receive a copy of the schedule of rent receipts for the month of July until the 22nd of July. Plaintiffs received the key on the 22nd day of July and on visiting the premises at 10:00 o'clock that day, in response to a telephone call, found the boiler room flooded as the result of the damaged boiler. There was evidence that a new boiler would cost $377.00, but there was a stipulation that it would cost $370.0. The plaintiffs, on viewing the premises prior to the consummation of the contract, were shown a crated refrigerator in the basement and were told that it was designated for suite No. 5. On the 22nd day of July, upon plaintiffs taking possession of the premises, the crated refrigerator was nowhere to be found. The testimony was that suite No. 5 was to have a stove and a refrigerator, but upon taking possession the plaintiffs found neither the stove nor the refrigerator in suite No. 5, and there was evidence that the replacement cost for these two items would be $350.00.

The testimony revealed that the rent schedule was relied upon by the plaintiffs and was represented, according to Exhibit 3, to be a total of $830.00 per month. On taking possession, plaintiffs found the actual rentals to be a total of $792.00 per month. Testimony was permitted over the objection of the plaintiffs as to the rents charged by them after the property had been transferred to them and after they were in possession thereof.

The trial court refused to charge the jury on the defendants' duty to disclose any known latent defects which could not

be reasonably ascertained by the plaintiffs. The plaintiffs specifically requested the trial court to charge on a breach of contract as well as on fraud, but the court refused.

The second assignment of error is well taken since the lawsuit was brought on the theory of fraud and breach of contract. A motion to separately state and number would have been proper, but since the case came to trial under the pleadings as they were, it was prejudicial error for the court to charge the jury that "the sole question is whether fraud was practiced."

The third assignment of error is well taken in that the trial court refused to charge the jury on the defendants' duty to disclose known latent defects which could not reasonably have been detected by the plaintiffs, particularly in the light of the testimony that "they were fixing the floor because it was full of termites," and that it "was like a honeycomb," in the answer to the question as to the appearance of the floor, and in the light of the testimony by a tenant, Mrs. Crowe, called by the plaintiffs, that Mrs. Zell told her "not to mention (the termites) to anyone."

The fourth assignment of error is well taken, the trial court having failed to charge the jury that under the terms of the contract defendants were liable for damages occurring to the property prior to the transfer of possession of the premises to the plaintiffs, if they found such damages existed from the time of the execution of the purchase contract and prior to the delivery of the key to the premises after escrow.

The fifth assignment of error is well taken in that the trial court permitted testimony of the rate of rentals charged by the plaintiffs after becoming the owners and taking possession, and that the sole question for the jury was the correctness or incorrectness of the rental rate, which was acted upon by the plaintiffs as an inducement in the purchase of the property.

For the foregoing reasons, the judgment of the Court of Common Pleas is reversed as contrary to law and the cause is remanded for further proceedings according to law, not inconsistent with this opinion.

Exceptions. Order see journal.

KOVACHY, P. J., and ARTL, J., concur.